IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MARIA DEGENNARO,                          :        CIVIL ACTION NO.
                                          :        3:03-CV-940-RNC
                    Plaintiff,            :
                                          :
        v.                                :
                                          :
NETEXIT, INC. f/k/a EXPANETS, INC.        :
and NETEXIT OF NORTH AMERICA, LLC :
f/k/a EXPANETS OF NORTH AMERICA,   :
LLC and AVAYA, LLC                        :        JURY TRIAL DEMANDED
                                          :
                    Defendants.           :        February 25, 2004

———————————————

**AMENDED COMPLAINT.**

———————————————

<u>**Jurisdiction and Venue**</u>.

1.      This action arises under Title VII of the Civil Rights Act of 1964 ("Title

VII"), as amended and codified at 42 U.S.C. §§ 2000e et seq., and the New York Human Rights

Law ("NYHRL"), McKinney's Executive Law § 290, as a result of a continuing pattern and

practice of discrimination and retaliation by Defendants, Netexit, Inc. f/k/a Expanets, Inc., Netexit

of North America, LLC f/k/a Expanets of North America, LLC and Avaya, LLC, which culminated

in the Plaintiff, Maria DeGennaro, being unlawfully terminated from employment on November 30,

2001.

2.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1337,

1343 and 1367, and 42 U.S.C. § 2000e-5(f).

3.      Venue is proper in this Court under 28 U.S.C. § 1391.

## Parties.

4.      Plaintiff, Maria DeGennaro ("DeGennaro"), is a female citizen of the United States of America and the State of New York, who currently is thirty-eight (38) years of age (D.O.B. -- 6/17/64) and resides at 44 North Broadway, White Plains, New York 10603.

5.      Defendant, Netexit, Inc. f/k/a Expanets, Inc., is a Delaware corporation which previously was engaged in the business of, inter alia, marketing, selling and servicing telecommunications systems.  At all pertinent times, Netexit, Inc. f/k/a Expanets, Inc. maintained offices within this judicial district, otherwise was and is subject to the jurisdiction of this Court and has been an employer within the meaning of Title VII and the NYHRL. 42 U.S.C. § 2000e(b); McKinney's Executive Law § 292.

6.      Defendant, Netexit of North America, LLC f/k/a Expanets of North America, LLC, is a Delaware corporation which previously was engaged in the business of, inter alia, marketing, selling and servicing telecommunications systems.  At all pertinent times, Netexit of North America, LLC f/k/a Expanets of North America, LLC maintained offices within this judicial district, otherwise was and is subject to the jurisdiction of this Court and has been an employer within the meaning of Title VII and the NYHRL.  42 U.S.C. § 2000e(b); McKinney's Executive Law § 292.

7.      Defendant, Avaya, LLC, is a Delaware corporation which is engaged in the business of, inter alia, marketing, selling and servicing telecommunications systems.  At all pertinent times, Avaya, LLC has maintained offices within this judicial district, otherwise was and is subject to the jurisdiction of this Court and has been an employer within the meaning of Title VII and the NYHRL.  42 U.S.C. § 2000e(b); McKinney's Executive Law § 292.   For purposes of this

action, Avaya, LLC is the successor to Expanets, Inc. and Expanets of North America, LLC and, under applicable and controlling law, is liable for all of the conduct of complained of in this Amended Complaint.

8.    Upon information and belief, at all pertinent times, Netexit, Inc. f/k/a Expanets, Inc., Netexit of North America, LLC f/k/a Expanets of North America, LLC and Avaya, LLC (collectively and individually, "Expanets") have acted as alter egos of each other, as an integrated enterprise, as a joint or single employer and/or as successors to the others.  At all pertinent times, Expanets has been an employer within the meaning of Title VII and the NYHRL. 42 U.S.C. § 2000e(b); McKinney's Executive Law § 292.

### Factual and Procedural Background.

### Expanets' Culture of Discrimination.

9.    During the time that DeGennaro worked for Expanets, the geographic region (i.e., Expanets' Empire Atlantic Region) in which she worked was dominated and effectively controlled by one manager, John Finn ("Finn"), a Regional Vice President, who is exceptionally sexist and biased against female employees.  Specifically, upon information and belief, at all pertinent times, Finn has believed and acted upon the belief that the job security and career advancement of men is more important than women because men generally do and should serve as the primary "breadwinners" in society.

10.    In recognition of these sexist views, during his employment with Expanets and/or its predecessors in interest, Lucent Technologies, Inc. ("Lucent"), AT&T Corp. ("AT&T"), and New York Telephone Company ("NY Tel"), Finn regularly took and attempted to take adverse employment actions against female employees of Expanets as a result of their gender.

11.     Upon information and belief, Finn has uttered sexist statements and has evinced sexist attitudes with respect to female employees of Expanets and its predecessors.

12.     In the Empire Atlantic Region, as a result of Finn's sexist views and biases and because Finn generally was uncomfortable interacting with female employees on an equal or collegial basis, a culture that permitted favoritism to men based upon their gender was fostered and, in effect, a "boys club" existed within the management of that geographic region.

13.     As a result of this sexist environment, male employees received preferential treatment with respect to employment opportunities, job security and the ability to earn income.

14.     Upon information and belief, Finn is the Expanets employee who was ultimately responsible for the decision to terminate DeGennaro from employment.

### DeGennaro's Employment With Expanets.

15.     DeGennaro is a conscientious, hard working individual who was employed by Expanets from on or about April 1, 2000 until November 30, 2001.

16.     Prior to April 1, 2000, DeGennaro was employed by a business unit of Lucent, which previously had been a division of AT&T.

17.     When Expanets acquired DeGennaro's business unit at Lucent effective April 1, 2000, DeGennaro became an employee of Expanets and continued to work as an Account Executive performing essentially the same responsibilities.

18.     As of April 1, 2000, the date that she commenced employment with Expanets, DeGennaro had almost fourteen (14) years of experience at Lucent and AT&T and had worked essentially her entire adult life for Expanets' predecessors (i.e., Lucent and AT&T).

-4-

19.     At all pertinent times, DeGennaro was employed by Expanets as an Account Executive.

20.     During her employment with Expanets, as well as its predecessors in interest (Lucent, AT&T), DeGennaro generally met or exceeded both her employers' expectations, as well as the expectations of customers that she serviced as an Account Executive.  Furthermore, even though DeGennaro serviced a comparatively difficult sales territory while employed by Expanets, DeGennaro continued to perform well under the circumstances and in comparison to her fellow Account Executives in the Empire Atlantic Region.

21.     During her employment with Expanets, DeGennaro received considerably less compensation than other Account Executives because she was paid a lower base salary than less experienced male Account Executives and was treated in a manner less favorable than certain male employees with respect to sales leads and credit for sales to which she was entitled.  In addition, in or about November, 2000, DeGennaro was deprived of the opportunity to service a lucrative territory in Connecticut as a result of Expanets' sexist policies and practices.

22.     During her employment with Expanets, as a result of the "boys club" created under the management of Finn, DeGennaro was the victim of continuous favoritism to certain male employees and, as a result, DeGennaro did not receive certain leads for new customers and other assistance in performing her duties.  In addition, at the same time, DeGennaro effectively was held to a higher performance standard than other male employees because she was given a quota that was not justified given the geographic area and customer base that she was assigned.

23.    Although DeGennaro verbally complained to her supervisor regarding this favoritism and subsequently complained to Finn about the same favoritism to male employees, as well as regarding the unfair manner in which she was being compensated, Expanets failed and refused to take any corrective action.

24.    Upon information and belief, Finn and other male managers at Expanets resented DeGennaro's complaints regarding the sexism that permeated Expanets and the male dominated culture that he had created and maintained in the Empire Atlantic Region.

25.    On November 30, 2001, DeGennaro was terminated without good or legitimate cause.

26.    Expanets failed and refused to offer DeGennaro any explanation as to why she had been terminated other than to state that she [meaning DeGennaro] had been "selected" for termination.  Expanets also failed and refused to disclose or explain the basis for this decision.

27.    Although Expanets has claimed that DeGennaro was chosen for termination based upon objective criteria and, upon information and belief, no objective criteria were employed and, in fact, a decision was made well before any "objective" evaluation of DeGennaro's performance allegedly was performed that DeGennaro would be terminated in the future and, therefore, she should not receive certain leads for new accounts, as well as training and other assistance.  Moreover, upon information and belief, any purportedly "objective" evaluation of DeGennaro's performance was based upon biased and corrupted data and information which only reflected Expanets' prior acts and practices of discrimination.

28.    Although Expanets has claimed that DeGennaro was terminated based upon objective criteria and a "score" derived from those criteria and the evaluation of her manager,

upon information and belief, no objective criteria or score ever were utilized in pursuing the reduction in force on November 30, 2001 and, instead, the subjective, discriminatory judgment and bias of male managers at Expanets, including Finn, was the sole or determinative factor resulting in DeGennaro's termination.

29.     Upon information and belief, Expanets elected to terminate DeGennaro as a result of sexist policies and practices and because Finn, as well as other Expanets' managers, resented DeGennaro's prior protests regarding sexist policies and practices in Expanets' workplace.

30.     Examination of the individuals who were retained by Expanets as Account Executives confirms the pretextual nature of Expanets' proffered reason for DeGennaro's discharge and that DeGennaro was the victim of unlawful discrimination/retaliation.  Specifically, a number of the individuals retained by Expanets for employment as Account Executives were less qualified and experienced individuals who were male.

31.     On November 30, 2001, DeGennaro was terminated as a result of her gender (female) and in retaliation for her past protests against discrimination.

32.     As a victim of unlawful discrimination, DeGennaro has suffered grief, humiliation, embarrassment, emotional pain and suffering, personal and mental anguish, inconvenience, loss of enjoyment of life and diminution of her reputation and standing in her community, as well as severe and continuing economic harm and injury, including loss of wages and benefits.

33.    The termination of DeGennaro was intentionally and willfully taken in violation of the Title VII, as well as NYHRL, and was extreme and outrageous under all of the circumstances.

**Plaintiff Has Met All Jurisdictional Prerequisites To Suit.**

34.    On or about August 5, 2002, DeGennaro commenced proceedings by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

35.    In excess of one hundred and eighty-days (180) days elapsed after the filing of the Charge of Discrimination by DeGennaro and the EEOC did not resolve any of these matters but, rather, issued Plaintiff a Notice of Right to Sue, thereby permitting all of the claims asserted in this Amended Complaint to be pursued.

36.    All conditions precedent to institution of this action have been fulfilled.

### COUNT I

### Title VII -- SEX DISCRIMINATION

**DeGennaro v. Netexit, Inc. f/k/a Expanets, Inc.,**
**Expanets of North America, LLC f/k/a Netexit of North America, LLC and Avaya, LLC**

37.    The averments of paragraphs 1 through 36 are restated as if set forth at length.

38.    At all times, Expanets, in violation of Title VII, followed and enforced a continuous policy or practice of discriminating against and/or tolerating discrimination by supervisors against female employees on the basis of their sex.

39.    Expanets terminated DeGennaro in violation of Title VII.

40.     The unlawful discharge of Plaintiff was willfully undertaken with evil motive to deprive Plaintiff of the protections afforded to her by Title VII.

41.     Defendants' conduct in terminating Plaintiff under the circumstances was cruel, brazen and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

42.     At all pertinent times, in violating Title VII, all Defendants acted either intentionally or, at a minimum, with reckless disregard for Plaintiff's rights.

**COUNT II**

**TITLE VII - RETALIATION**

**DeGennaro v. Netexit, Inc. f/k/a Expanets, Inc.,**
**Expanets of North America, LLC f/k/a Netexit of North America, LLC and Avaya, LLC**

43.     The averments of Paragraphs 1 through 42 are restated as if set forth at length.

44.     Expanets retaliated against DeGennaro by terminating her because she opposed practices that violated Title VII and otherwise reflected a sexist environment within Expanets' workplace and/or favoritism toward certain male employees of Expanets.

45.     Expanets terminated DeGennaro in violation of Title VII.

46.     The unlawful discharge of Plaintiff was willfully undertaken with evil motive to deprive Plaintiff of the protections afforded to her by Title VII.

47.     Defendants' conduct in terminating Plaintiff under the circumstances was cruel, brazen and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

48.     At all pertinent times, in violating Title VII, all Defendants acted either intentionally or, at a minimum, with reckless disregard for Plaintiff's rights.

**COUNT III**

**NYHRL  - DISCRIMINATION/RETALIATION**

**DeGennaro v. Netexit, Inc. f/k/a Expanets, Inc.,**
**Expanets of North America, LLC f/k/a Netexit of North America, LLC and Avaya, LLC**

49.     The averments of paragraphs 1 through 48 are restated as if set forth at length.

50.     Expanets terminated DeGennaro in violation of the NYHRL and as part of a continuous policy and practice of discrimination and retaliation by Expanets in violation of the NYHRL.

51.     The unlawful discharge of Plaintiff was willfully undertaken with evil motive to deprive Plaintiff of the protection afforded to her by the NYHRL.

52.     Defendants' conduct in terminating Plaintiff under the circumstances was cruel, brazen and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

53.     At all pertinent times, in violating the NYHRL, all Defendants acted either intentionally or, at a minimum, with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff, Maria DeGennaro, having been unjustly harmed by intentional and outrageous violations of the law, for which Defendants, Netexit, Inc. f/k/a Expanets, Inc., Netexit of North America, LLC f/k/a Expanets of North America, LLC and Avaya, LLC, are jointly and severally responsible, prays that this Court grant the following relief:

      a.     Damages to Plaintiff for all lost income and benefits, including, but not limited to, wages, bonuses, health insurance, pension and other retirement benefits, of which she has been deprived until the date of entry of judgment in an amount in excess of $100,000;

      b.     Front pay damages to Plaintiff in an amount to fully compensate her for all future lost income and benefits in an amount in excess of $100,000;

      c.     General and compensatory damages for the emotional pain, distress and suffering, mental anguish, humiliation, loss of enjoyment of life and damage to reputation that Plaintiff has suffered in an amount in excess of $1,000,000 to be determined by the jury;

      d.     Punitive damages in an amount in excess of $1,000,000 to be determined by the jury;

      e.     A mandatory injunction ordering Defendants to cease and desist from violating Title VII and the NYHRL:

      f.     Prejudgment interest;

      g.     Attorneys' fees and costs;

      h.     Expert witness fees and other costs of suit; and

      i.     Such further relief as the Court deems appropriate and just.

## JURY DEMAND.

Plaintiff demands trial by jury on all issues in this action.

_____
James E. Miller, Esquire
Federal Bar No. CT-21560
Shepherd Finkelman Miller & Shah, LLC
One Lewis Street
Hartford, CT 06103
(Tel) (860) 246-0600
(Fax) (860) 246-0700

James C. Shah
Shepherd Finkelman Miller & Shah, LLC
35 East State Street
Media, Pennsylvania 19063
(Tel)(610) 891-9880
(Fax)(610) 891-9883

Attorneys for Plaintiff,
Maria DeGennaro